UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TASHA W.,

                              Plaintiff,

v.                                                      3:20-CV-731
                                                        (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

APPEARANCES:                          OF COUNSEL:

LACHMAN & GORTON                      PETER A. GORTON, ESQ.
Attorney for Plaintiff
1500 E. Main Street
P.O. Box 89
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.           MOLLY E. CARTER, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**MEMORANDUM-DECISION AND ORDER**</u>

Plaintiff Tasha W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for Supplemental Security Income ("SSI"). (Dkt. No.

1.) This case has proceeded in accordance with General Order 18 of this Court which sets forth

the procedures to be followed when appealing a denial of Social Security benefits. Both parties

have filed briefs. (Dkt. Nos. 11, 13.) Oral argument was not heard. Pursuant to 28 U.S.C. §

636(c), the parties have consented to the disposition of this case by a Magistrate Judge. (Dkt. Nos 4, 7.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and this case is remanded to the Social Security Administration ("SSA") for a *de novo* review.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on January 23, 1986. (Administrative Transcript at 164.[1]) She graduated high school after attending special education classes due to difficulties with reading and writing. (T. 43, 189.) At the time of her administrative hearing, Plaintiff resided in an apartment with her boyfriend, her mother, and her five children, ages 12, 10, 7, 5, and 1. (T. 41.) Her prior employment included hotel housekeeping and doing laundry at a home for the developmentally disabled. (T. 44-45, 208-209.)

On June 27, 2017, Plaintiff filed an application for SSI, alleging an onset date of March 13, 2013. (T. 164-169.) Plaintiff's application was initially denied on November 8, 2017. (T. 66-87.) Thereafter, Plaintiff filed a written request for a hearing, which was held on April 19, 2019 before Administrative Law Judge ("ALJ") Gretchen Mary Greisler. (T. 36-65.) On May 7, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 12-30.) On May 12, 2020, the Appeals Council denied Plaintiff's request for review. (T. 1-6.) Plaintiff commenced this action in the Northern District of New York on July 1, 2020. (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system. Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

## II.    RELEVANT LEGAL STANDARD

### A.    Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she

is "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  In addition, a plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The

Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.

Yuckert*, 482 U.S. 137, 140-42 (1987).  Under the five-step sequential evaluation process, the

decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of

---

[2]  While the Supplemental Security Income program has special economic eligibility
requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. §
1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are
cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d
Cir. 1983) (citation omitted).

> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

    The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v.

Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.

1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the

defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working.

*Id.*

    **B.**    **Scope of Review**

    In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). A reviewing

court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal

standards were applied, even if the decision appears to be supported by substantial evidence.

*Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

    A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision. 42

U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the

crucial factors justifying his findings with sufficient specificity to allow a court to determine

whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

### C.    Standards for ALJ Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no

---

[3] Plaintiff's application was dated May 16, 2017. (T. 203-217.) Thus, the new regulations apply in his case.

longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### D.     Standards for ALJ Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the regulations.[4] The evaluation of

---

[4]  The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of

symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[5]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning

---

the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167. The Court will remain consistent with the terms as used by the Commissioner.

[5] The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was superseded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## III.     THE ALJ'S MAY 2, 2019, DECISION

In her May 2, 2019, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. (T. 17-26.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since her application date of June 27, 2017. (T. 17.) The ALJ next determined Plaintiff had the following severe impairments: spine disorder degenerative disc disease; hip impairment status post-surgery; hearing loss mixed conductive and sensorineural unspecified; vertigo; and obesity. (*Id.*) The ALJ then determined Plaintiff does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (T. 18.)

The ALJ next found, based on the above-stated impairments, Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work" with certain limitations:

> [Plaintiff] can occasionally stoop and climb stairs and ramps but
> cannot balance, crouch, crawl, kneel, climb ladders, ropes or
> scaffolds, work at unprotected heights or in close proximity to
> dangerous machinery. [Plaintiff] is limited to working in an
> environment with no more than moderate noise level as defined in

> the Selected Characteristics of Occupations. [Plaintiff] cannot
> tolerate concentrated exposure to respiratory irritants.

(T. 18-24.)

The ALJ found Plaintiff had no past relevant work, but determined Plaintiff was not disabled because there were a significant number of jobs in the national economy she could perform. (T. 24-26.) Specifically, the ALJ relied upon the vocational expert's ("VE") testimony to conclude someone of Plaintiff's "age, education, work experience, and residual functional capacity" could perform the requirements of representative occupations such as "telephone solicitor," "food checker or cafeteria cashier," and "clerical sorter." (T. 25-26.) Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the Social Security Act, from June 27, 2017 through the decision date of May 7, 2019. (T. 26.)

## IV.  THE PARTIES' CONTENTIONS

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ: (1) fails to properly evaluate the medical opinion evidence related to Plaintiff's vertigo and functional limitations related to time off task and absenteeism; and (2) errs at step five due to material differences between the hypothetical questions presented to the VE and the ALJ's actual RFC determination. (Dkt. No. 11 at 9-18.) In response, the Commissioner contends the ALJ's decision applies the correct legal standards, and is supported by substantial evidence. (Dkt. No. 13 at 5-23.)

## V.  THE COURT'S ANALYSIS

### A.  The ALJ Was Not Required to Apply the Treating Physician Rule to Dr. Dean's Opinion.

As discussed above, Plaintiff's application for benefits is governed by the amended regulations eliminating the treating physician rule because it was filed after March 27, 2017.

Plaintiff contends the Commissioner's refusal to give deference to a treating physician violates the Second Circuit precedent in the *Schisler* line of cases[6] and defies the common sense recognition of increased reliability when a physician has a lengthy treatment relationship with a patient.

Multiple courts have considered similar arguments as the new regulations become more widely applied, and all have upheld the validity of the Commissioner's elimination of the treating physician rule and implementation of the new regulations. *Harry B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-227 (ATB), 2021 WL 1198283, at *11 (N.D.N.Y. March 30, 2021) ("The statute gives the Commissioner broad discretion and does not state how evidence must be considered and does not provide for any particular hierarchy of medical opinion. Thus, Plaintiff's challenge to the new regulations cannot succeed."); *Dany Z. v. Saul*, No. 2:19-CV-217, 2021 WL 1232641, at *10 (D. Vt. March 31, 2021) ("Having examined the Second Circuit's precedent in this area, the Court finds it clear that the Second Circuit did not find that the treating physician rule was categorically required by the statute. Rather, the Second Circuit was carrying out a review developed in *Schisler I* and *Schisler II*, and in doing so it affirmed the idea that regulations guiding ALJs in their evaluation of medical opinions fell within the scope of Section 405(a)'s grant of authority."); *Carr v. Comm'r of Soc. Sec.*, No. 1:20-CV-217 (EPG), 2021 WL 1721692, at *5 (E.D. Cal. April 30, 2021) ("Because the agency's interpretation is a reasonable policy choice for the agency to make

---

[6] In *Schisler v. Heckler,* 787 F.2d 76 (2d Cir. 1986) ("*Schisler I*"), the Second Circuit held the SSA, who argued it was already following the judicially created treating physician rule, had to inform administrative adjudicators of its adoption of this rule. In *Schisler v. Bowen*, 851 F.2d 43 (2d Cir. 1988) ("*Schisler II*"), the Second Circuit reviewed a proposed SSR issued pursuant to the order and remand in *Schisler I*, and found the proposed SSR was not consistent with the treating physician rule and ordered relevant modifications. In *Schisler v. Sullivan*, 3 F.3d 563 (2d Cir. 1993) ("*Schisler III*") the agency issued regulations addressing the treating physician rule. The Second Circuit found the new regulations were entitled to deference because the agency had complied with the applicable rule-making procedures. This history can be found in *Schisler III,* 3 F.3d at 565-567.

for this ambiguous statutory issue, the Court finds that the regulations are entitled to Chevron deference with respect to the weight given to various medical sources.").  This court agrees with these decisions, and Plaintiff has not raised any new issues associated with the promulgation and implementation of the current regulations suggesting further analysis is appropriate in this case.

Moreover, Plaintiff's invocation of the treating physician rule in this case fails to recognize a treating physician's opinion was only given "controlling" weight under the prior regulations if it was "consistent with other substantial evidence in the record." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  As other courts have recognized,

> The new regulations restate the factors which have always been used in considering any medical opinion. A treating physician's opinion may still be more persuasive because he or she will have examined the plaintiff more frequently and will presumably have a more substantial relationship with the patient. Thus, although there is no "special" deference specifically given, the treating relationship is one of the factors to be considered in the analysis under the new regulations.

*Harry B,* 2021 WL 1198283, at *10; *see also Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vermont July 14, 2020) (quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)) ("Even though ALJs are no longer directed to afford controlling weight to treating source opinions - no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.").

Because this Court finds the regulations regarding the evaluation of medical opinion evidence were promulgated in a valid exercise of the Commissioner's authority, the Court need not analyze the question of whether Dr. Gary Dean's opinion would be controlling under the

treating physician rule.  However, the Court agrees with Plaintiff's alternate argument and finds

the ALJ's decision is not supported by substantial evidence under the new regulations, for the

reasons set out below.

**B.     The ALJ Failed to Consider the Impact Plaintiff's Vertigo Would Have on Her Ability to Remain On-Task and Maintain Regular Attendance.**

A claimant's RFC is the most she can do despite her limitations.  20 C.F.R. §

404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis.  A regular and

continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d

45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis."  *Id.*

(citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by

an individual's response to demands of work . . . must be reflected in the RFC assessment.'"

*Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11,

2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth

with sufficient specificity to enable [the Court] to decide whether the determination is supported

by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

On February 25, 2019, Dr. Dean completed a questionnaire setting out his opinion of

Plaintiff's physical impairments for the period between September 10, 2016 and February 25,

2019.  (T. 464-465.)  Dr. Dean indicated Plaintiff had hearing loss, vertigo, and low back pain.[7]

---

[7] Dr. Dean failed to complete the section of the form requesting identification of

(*Id.*)  On the check-box form, Dr. Dean opined Plaintiff's conditions would diminish her work pace and cause her to need to rest at work.  (*Id.*)  He also opined these conditions would cause Plaintiff to be off task more than 33% of the workday, and estimated she would miss more than four days of work per month.  (T. 464-465.)  Dr. Dean did not opine on other functional limitations, such as the ability to sit, stand, and walk.  (T. 465.)

The ALJ recognized Dr. Dean as an acceptable medical source who had been treating Plaintiff since 2014, but considered his opinion to be nonpersuasive because it was "wholly inconsistent with examination findings and the record in its entirety."  (T. 24.)  The ALJ also noted Plaintiff "has had little treatment for vertigo and back pain," and her "hearing improved with the appropriate use of a hearing aid."  (*Id.*)  The ALJ found Dr. Dean's opinion was inconsistent with Plaintiff's activities of daily living, which included caring for five children on a daily basis, and concluded the physician's estimates of time off task and potential absenteeism were "speculative" with "no support."  (*Id.*)

In her wholesale rejection of Dr. Dean's opinion, the ALJ failed to explain how she considered the supportability and consistency factors in her evaluation, and therefore her conclusion is not supported by substantial evidence.  For example, the ALJ found Plaintiff received "little treatment" for vertigo, but ignored Dr. Dean's own notes documenting multiple unsuccessful treatment attempts.  For example, Dr. Dean detailed in September 2018 how Plaintiff's vertigo has been a chronic problem "for probably more than a decade" but Plaintiff had been unresponsive to physical therapy or medication.  (T. 442.)  This is consistent with Dr. Dean's May 2017 examination note indicating "nothing has really worked" to address Plaintiff's

Plaintiff's conditions and diagnoses, but added a handwritten note indicating Plaintiff "has hearing loss & vertigo as well as low back pain." (T. 464.)

intermittent dizziness, and "I have no new treatments to offer her . . . ." (T. 325, 327.) The difficulty in treatment largely stemmed from an inability to identify a root cause of Plaintiff's random episodes of dizziness and light-headedness, despite a series of brain MRIs, autoimmune bloodwork, audiology and inner ear exams and physical evaluations by balance specialists. (T. 442, 473, 471, 476.) Other treatment options, such as steroids, were discussed in April 2018 but were postponed while Plaintiff was nursing her youngest child. (T. 473.)

The ALJ's summary rejection of Dr. Dean's opinion also fails to address the apparent consistency between the treating physician's opinion and the treatment notes from the multiple specialists who confirmed Plaintiff's vertigo symptoms but were unable to identify a cause. For example, Plaintiff underwent a series of vestibular physical therapy evaluations in March 2018, and showed difficulty relying on vestibular cues to maintain her balance on a moving surface with her eyes closed. (T. 471.) The physical therapist found her symptoms to be "suggestive of an episodic event like migraine or Meniere's."[8] (*Id.*) In April 2018, Dr. Hayes H. Wanamaker performed a Romberg test[9] of Plaintiff's muscle coordination and observed swaying, but found her symptoms inconsistent with typical inner ear vertigo. (T. 473-474.) He suggested she may be suffering from migraine associated dizziness. (T. 474.) In August 2018, Aspen D'Angelo, a physician assistant specializing in rheumatology, examined Plaintiff and reviewed her bloodwork but found no evidence of any autoimmune cause. (T. 421-422.) In December 2018, Plaintiff

---

[8] Meniere's Disease is a disorder of the inner ear causing severe dizziness, ringing in the ears, and hearing loss. https://www.nidcd.nih.gov/health/menieres-disease

[9] A Romberg test evaluates a patient's ability to maintain balance in an upright stance with their eyes closed. https://www.ncbi.nlm.nih.gov/books/NBK563187/

was treated at a hospital emergency room when continuous dizziness caused her to feel as if her head were "floating in the clouds." (T. 431.)

Defendant correctly asserts that an ALJ may properly consider a plaintiff's daily activities, including childcare, as part of the RFC analysis. 20 C.F.R. § 416.929(c)(3); *see Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (ALJ properly considered the plaintiff's varied daily activities in formulating the RFC); *Natasha D. v. Comm'r of Soc. Sec.,* 3:19-CV-515 (ATB), 2020 WL 1862966, at *9 (N.D.N.Y. April 13, 2020) (ALJ properly considered the plaintiff's testimony about preparing her child for school each morning and taking her to Girl Scout meetings without assistance); *Herrington v. Berryhill*, No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (activities of daily living, including childcare, are appropriate factors for an ALJ to consider when assessing a plaintiff's claimed symptoms and limitations). However, the ALJ appears to have overstated Plaintiff's ability to perform her daily activities during her vertigo episodes. Plaintiff testified these episodes force her to stand still and hold onto something in order to avoid falling and sometimes require her to lie down until the episode passes. (T. 52-57.) Plaintiff reported dependence on her boyfriend, her mother, or even her older children to care for her infant during these episodes, which sometimes lasted several hours. (T. 55.) The ALJ did not identify any record evidence to refute or challenge this testimony. Thus, the ALJ failed to draw the necessary connection between Plaintiff's daily activities and the attention and concentration required to remain on-task over the course of an ordinary workday.

The court also notes the ALJ's rejection of Dr. Dean's opinion was a rejection of the only medical opinion to directly address Plaintiff's vertigo and the resulting functional limitations related to work pace, time off-task, and attendance. *See Giddings v. Astrue*, 333 F.

App'x 649, 652 (2d Cir. 2009) ("[W]hen a medical opinion stands uncontradicted, [a] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome it.") (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)). Defendant contends the November 7, 2017, opinion of Dr. Syed Ahmed, a non-examining state agency consultant, offers an effective counter to Dr. Dean's opinion because it addressed the issues of work pace, time off-task, and attendance before concluding Plaintiff was able to maintain full-time work. (Dkt. No. 13 at 20-21.) This argument is not persuasive. Dr. Ahmed's opinion does not discuss Plaintiff's vertigo symptoms, as he appears to have focused his evaluation on Plaintiff's asthma and back pain. (T. 70-73.) Dr. Ahmed's opinion also predated all of the treatment notes from the multiple specialists who evaluated Plaintiff's vertigo in 2018, as well as Dr. Dean's February 2019 opinion. (T. 69-70, 421-422, 464-465, 471-474.)

More importantly, the ALJ's decision never references Dr. Ahmed in her assessment of Dr. Dean's opinion. (T. 22, 24.) Post hoc explanations do not constitute substantial evidence. *Danette Z. v. Comm'r of Soc. Sec.*, 1:19-CV-1273 (ATB), 2020 WL 6700310, at *7 (N.D.N.Y. November 13, 2020); *Andino v. Saul,* No. 1:18-CV-00379, 2019 WL 4621878, at *5 (W.D.N.Y. Sept. 24, 2019) ("any explanation that [the ALJ] failed to provide cannot be supplied by the Commissioner post hoc.") (citing *McKinstry v. Astrue*, No. 5:10–cv–319, 2012 WL 619112, at *4 (D. Vt. 2012)), *aff'd*, 511 Fed. App'x. 110 (2d Cir. 2013) ("[a] court must not engage in a post hoc effort to supplement the reasoning of the ALJ"); *see also Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("[a] reviewing court may not accept appellate counsel's post hoc rationalizations for agency action"). In fact, the ALJ recognized the limitations of Dr. Ahmed's opinion on this topic. Although she found Dr. Ahmed's opinion to be partially persuasive, the ALJ expressly

discounted it due to the lack of a physical examination and because it "provided no restrictions related to the claimant's vertigo (such as avoiding hazards). (T. 24.). Similarly, the ALJ found Dr. Gilbert Jenouri's consultative examination opinion to be persuasive as to Plaintiff's abilities to walk, stand, bend, climb stairs, lift, and carry, but noted Dr. Jenouri had only diagnosed her with lower back pain, hip pain, knee pain, and asthma, and "did not address the necessity of avoiding dangers due to vertigo." (T. 23-24.)

The ALJ's decision does contain a thorough summary of the treatment history of Plaintiff's vertigo as well as her testimony regarding her symptoms. (T. 19, 22.) However, the ALJ failed to draw any connection between this summary, the various opinion evidence, and the RFC determination, particularly with regard to the functional limitations impacting Plaintiff's ability to work. Therefore, this court will remand for further administrative proceedings. *See Michaels v. Colvin*, 621 F. App'x 35, 38 (2d Cir. 2015) (remanding where ALJ failed to adequately assess functional limitations of episodic dizziness caused by plaintiff's vestibular disorder); *Tanner v. Comm'r of Soc. Sec.,* No. 5:15-CV-577 (TJM/ATB), 2016 WL 3189754, at *12 (N.D.N.Y. May 11, 2016) (remanding where RFC determination failed to evaluate the functional limitations imposed by the severe impairments of headache and vertigo).

### C. The ALJ's Hypothetical Questions Answered by the VE Do Not Correspond to the ALJ's RFC Determination.

At Step Five, the burden shifts to the Commissioner "to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*,

802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating Plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect Plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper. *Id.* at 276-77. "Conversely, expert vocational testimony given in response to hypothetical questions that do not present the full extent of claimants' impairments, limitations and restrictions, or are otherwise inadequate, cannot constitute substantial evidence to support a conclusion of no disability." *Medovich v. Colvin,* No. 3:13-CV-1244 (GLS/ESH), 2015 WL 1310310, at *14 (N.D.N.Y. March 23, 2015); *see also Harry B.*, 2021 WL 1198283, at *15 (citing *De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *see also Peatman v. Astrue*, No. 5:10-CV-307, 2012 WL 1758880, at *7 n.5 (D. Vt. May 16, 2012) (the hypothetical question posed to the VE must accurately portray the plaintiff's physical and mental impairments) (citations omitted).

VE John Bopp testified at the hearing. (T. 58-64.) The ALJ questioned him regarding two hypothetical individuals. First, the ALJ asked VE Bopp:

> Assume an individual of the same age, education, and work background as Claimant, who can perform sedentary work with the following restrictions. The individual can *occasionally stoop, balance*, crouch, crawl, kneel, and climb stairs and ramps but cannot climb ladders, ropes, and scaffolds and work at unprotected heights or in close proximity to dangerous machinery. The individual is limited to working in an environment with no more than moderate noise level as defined by the Selected Characteristics of Occupations. And the individual cannot tolerate concentrated exposure to respiratory irritants.

(T. 59-60.) (emphasis supplied). VE Bopp testified such an individual could not perform

Plaintiff's prior work, but could perform other work such as telephone solicitor, food checker or

cafeteria cashier, and clerical sorter. (T. 61.)

The ALJ then amended her hypothetical slightly to assume:

the individual can occasionally stoop and climb stairs and ramps but *cannot balance on uneven surfaces*, crouch, crawl, kneel, climb ladders, ropes, or scaffolds, or work at unprotected heights, or in close proximity to dangerous machinery, and then continue with the noise level and irritants restrictions.

(T. 61.) (emphasis supplied). VE Bopp testified such an individual would be unable to perform

Plaintiff's prior work, but would still be able to perform the representative positions of telephone

solicitor, food checker or cafeteria cashier, and clerical sorter.

The ALJ relied on this VE testimony to conclude there were jobs existing in significant

numbers in the national economy Plaintiff could perform. (T. 25.) However, Plaintiff correctly

points out neither hypothetical matched the ALJ's ultimate RFC determination, which merely

stated Plaintiff "cannot balance." (T. 18.) Defendant argues any error in the ALJ's hypothetical

is harmless because none of the jobs identified by the VE actually included a balancing

requirement, according to the Dictionary of Occupational Titles. *See* Dictionary of Occupational

Titles § 209.687-022, 1991 WL 671812 (U.S. Dep't of Labor 1991) (balancing not present for

clerical sorter); *id*. at § 211.482-014, 1991 WL 67185 (balancing not present for food

checker/cafeteria cashier); *id*. at § 299.357-014, 1991 WL 672624 (balancing not present for

telephone solicitor). In many cases, Defendant's argument would be persuasive. *Kelley S. v.

Comm'r of Soc. Sec*., No. 5:17-1234, 2019 WL 529909, at *10 (N.D.N.Y. Feb. 11, 2019)

("omitting a limitation from the RFC finding is irrelevant when the jobs the ALJ relies on at step

five do not require activities affected by that limitation"). However, the court finds this general

rule inapplicable in this case.

First, Defendant's argument underestimates the sizable disparity between the

hypotheticals presented to the VE and the actual RFC determination. The Commissioner has

stated:

> [B]alancing means maintaining body equilibrium to prevent falling when walking,
> standing, crouching, or running on narrow, slippery, or erratically moving
> surfaces. If an individual is limited in balancing only on narrow, slippery, or
> erratically moving surfaces, this would not, by itself, result in a significant erosion
> of the unskilled sedentary occupational base. *However, if an individual is limited*
> *in balancing even when standing or walking on level terrain, there may be a*
> *significant erosion of the unskilled sedentary occupational base. It is important*
> *to state in the RFC assessment what is meant by limited balancing in order to*
> *determine the remaining occupational base.*

SSR 96-9p, 1996 WL 374185, at *7 (emphasis supplied). Here the ALJ's RFC determination is

straightforward – Plaintiff can never balance, whether or not on level terrain. (T. 18.) The ALJ

never questioned the VE regarding this highly restrictive functional limitation, despite the greater

likelihood of "significant erosion of the unskilled sedentary occupational base." *See Ramos v.*

*Astrue*, No. 09-CV-90, 2010 WL 2854450, at *3-4 (W.D.N.Y. July 19, 2010) (analyzing SSR

96-9 and remanding where ALJ failed to accurate assess plaintiff's difficulties with balance). An

error of this magnitude requires remand. *See Johnson v. Berryhill*, No. 3:16-CV-1050 (SRU),

2017 WL 2381272, at *12 (D. Conn. June 1, 2017) ("If the ALJ "ask[s] the vocational expert a

hypothetical question that fail[s] to include or otherwise implicitly account for all of [the

claimant]'s impairments," then "the vocational expert's testimony is not 'substantial evidence'

and cannot support the ALJ's conclusion that [the claimant] c[an] perform significant numbers of

jobs in the national economy.") (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181

(11th Cir. 2011)).

The disparity between the hypothetical and the RFC prevents this court from concluding

the ALJ's step five error is harmless.  The Second Circuit has deemed an inaccurate hypothetical in a Social Security disability determination to be harmless when "the hypothetical question posed to the vocational expert implicitly (and sufficiently) accounted for [the claimant]'s particular non-exertional limitations." *McIntyre*, 758 F.3d at 148.  Due to the disconnect between the hypotheticals presented to the VE and the ultimate RFC determination, the ALJ did not sufficiently account for the impact imposed by Plaintiff's balance restrictions, particularly in the areas of time off-task and absenteeism.

The ALJ specifically asked VE Bopp for his opinion regarding employer tolerances for time off task. (T. 62.)  VE Bopp, whose testimony formed the basis of the ALJ's step five determination, opined the maximum employer tolerance for time off task would be approximately ten percent of the workday. (*Id*.)  When Plaintiff's counsel questioned him about missed workdays, VE Bopp identified the maximum employer tolerance for absenteeism as no more than one day per month. (T. 62-63.)  VE Bopp also testified a typical employer was likely to tolerate no more than an additional ten minutes in break time over the course of the workday. (T. 63.)  It seems likely an employee who had no ability to balance and was apparently at continuous risk of falling due to dizziness and lightheadedness from vertigo would strain those employer tolerances, but the hypotheticals presented the VE did not address this issue.

 The need for further expert testimony on this issue is further demonstrated by a brief exchange between Plaintiff's counsel and VE Bopp.  The excerpt provides few answers but demonstrates the difficulty of assessing the potential impact of Plaintiff's vertigo in the workplace, in light of an RFC determination of a complete inability to balance:

Q:      And I'm going to hit you with one more to think about.  What if the person actually - - in this case, you know, we've got the vertigo sometimes so bad that [Plaintiff] actually falls to the floor.  Would that - - if that happened once,

would it be tolerated?  Twice?  Three strikes, you're out?  How would that go, do you think?  What would employers do with that?

A:      I don't think I can give you a reliable opinion…in that regard.

(T. 63-64.)  Because the ALJ's hypothetical did not accurately reflect the potential impact of Plaintiff's vertigo, it raises questions about the reliability of the VE's opinion.  Accordingly, the ALJ's error at step five is not harmless, and it provides a separate basis for remand for further administrative proceedings.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 U.S.C. §  405(g) for proceedings consistent with this Decision and Order.


Dated: July 14, 2021
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge